**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-02048-NYW-MDB

MATTHEW PRICE,

Plaintiff,

v.

EXPRESS SCRIPTS, INC. d/b/a EXPRESS SCRIPTS and
CIGNA CORPORATION, d/b/a CIGNA and
CIGNA-EVERNORTH SERVICES, INC. d/b/a Evernorth Health Services

Defendants.

---

**DEFENDANTS' REPLY IN SUPPORT OF ITS**
**MOTION TO COMPEL ARBITRATION**

---

Defendants Express Scripts, Inc., Cigna Corporation, and Cigna-Evernorth Services, Inc. ("Defendants"), by and through their undersigned counsel, hereby submit their Reply in Support of Motion to Compel Arbitration [ECF No. 37] as follows:

## I. INTRODUCTION

Plaintiff's Response [ECF No. 41] does not dispute that he was employed by Express Scripts, that he used Workday during his employment, or that the Voluntary Arbitration Agreement (the "Agreement") applies to the types of claims he asserts. Nor does he deny assenting to the Agreement reflected in Defendants' Workday record. Instead, Plaintiff asks this Court to deny Defendants' Motion because (1) six years after the fact, Plaintiff cannot independently recall "the exact Workday screen or document" that he executed and acknowledged in Workday, and (2) that if he knew then what he

knows now, he would not have executed the Agreement. ECF No. 41-1 at ¶¶ 5-8. Plaintiff's inability to "truthfully confirm or deny from personal recollection signing the acknowledgment" does not create a genuine dispute concerning the Agreement's formation. *Id.* at ¶ 5. A hearing is not necessary simply because Plaintiff does not specifically remember signing the Agreement.

Because Plaintiff concedes he cannot credibly deny formation, Plaintiff's Response and Defendants' briefing are sufficient to resolve this Motion without further proceedings. The Workday record identifies Plaintiff by name and employee number, displays the "Acknowledgment" signature type with a date and time of March 4, 2020, and reproduces the language confirming Plaintiff's agreement to the Arbitration Agreement. ECF No. 37-1. Although Plaintiff cannot recall that specific Agreement, he *does know* for a fact that during his employment, "Workday was used for multiple types of employment-related administrative matters, including tasks or documents requiring completion or acknowledgment," and that Plaintiff "completed or acknowledged multiple types of Workday tasks or documents." ECF No. 41-1 at ¶¶ 3-4.

Plaintiff's remaining arguments—that Cigna-Evernorth Services, Inc. lacks enforcement standing, that Defendants waived their right to arbitrate, and that filing fees render the forum inaccessible—are each meritless and fail to overcome the strong federal policy favoring enforcement of arbitration agreements.

## II. ARGUMENT

### A. Plaintiff Electronically Signed and Assented to a Valid Arbitration Agreement.

Defendants have met their initial burden to establish the existence of a valid and enforceable arbitration agreement. A party moving to compel arbitration must provide "evidence sufficient to demonstrate the existence of an enforceable agreement." *Smith v. Para Energy Grp., LLC*, Civil Action No. 23-cv-01756-PAB-KAS, 2023 U.S. Dist. LEXIS 226901, at *6 (D. Colo. Dec. 20, 2023) (citing *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 613 (10th Cir. 2014)). "The burden then shifts to the nonmoving party 'to raise a genuine dispute of material fact regarding the existence of an agreement.'" *Id.* (internal citation omitted). If the plaintiff fails to meet his burden, then arbitration is appropriate for all disputes covered by the arbitration. *See Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005).

Plaintiff's Response challenges formation by baselessly invoking the Colorado Uniform Electronic Transactions Act to argue that the Workday record evidencing his digital signature does not establish his assent. It does. "Courts routinely uphold digital agreements, provided the signatory had reasonable notice, either actual or constructive, of the terms of the putative agreement and . . . manifested assent to those terms." *Levine v. Vitamin Cottage Nat. Food Mkts.*, Inc., Civil Action No. 20-cv-00261-STV, 2021 U.S. Dist. LEXIS 186188, at *16 (D. Colo. Sep. 27, 2021) (internal quotation marks and citation omitted). Digital signatures are "widely accepted as evidence of mutual assent" and courts "regularly accept evidence of a company's regular practices as evidence that an

employee signed an agreement as part of employment onboarding or other standard procedure." *Id.* at *17.

Here, the acknowledgment record identifies Plaintiff by name and employee number 410657, labels the event "Acknowledgment," records the date and time, and reproduces detailed assent text tied to the act of clicking the acknowledgment button. Colorado law provides that an electronic record or signature is attributable if it was the person's act, and that attribution may be shown "in any manner," including through the efficacy of a security procedure and the surrounding circumstances. Colo. Rev. Stat. § 24-71.3-109(1)-(2). The personal identifiers, event-specific timestamp, and express assent language in this record satisfy that standard. Further, Plaintiff himself provides the evidence that this was a regular company practice, as he routinely acknowledged Workday documents via digital signature. ECF No. 41-1 at ¶¶ 3-4.

Plaintiff's demand for a separate source-system affidavit confuses the weight of the evidence with whether Defendants have made their required initial showing. As such, Defendants have easily satisfied their initial burden of setting forth sufficient evidence to demonstrate that an enforceable arbitration agreement exists.

The burden thus shifts to Plaintiff to establish a material dispute of fact regarding the existence of the Agreement. He fails to do so. All he can muster is his admitted inability to "truthfully confirm or deny from personal recollection signing the acknowledgment." *Id.* at ¶ 5. This only evidences a failure of memory – not a genuine dispute of material of fact going to the existence of the Agreement as demonstrated by Defendants' abundant supporting evidence. After all, not remembering an event and the occurrence of an event

are not inconsistent. The fact that one does not remember signing a document is insufficient to dispute whether the document was signed. And a hearing would serve no purpose if Plaintiff testifies that he simply does not remember, which he has stated via his declaration.

Courts have found that "[g]eneral denials and statements that a user does not recall visiting a website or agreeing to arbitrate are insufficient to defeat arbitration." *Beattie v. TTEC Healthcare Sols., Inc.*, No. 1:18-cv-03098-RM-NRN, 2019 U.S. Dist. LEXIS 85370, at *7 (D. Colo. May 21, 2019); *see also Stephens v. Frisch's Big Boy Rests.*, No. 1:19-cv-954, 2020 U.S. Dist. LEXIS 147677, at *7 (S.D. Ohio July 29, 2020) ("Plaintiff's naked assertion that he did not sign the arbitration agreement (or cannot recall signing the arbitration agreement), without more, is insufficient to raise a dispute of material fact regarding the validity of the arbitration agreement or whether he electronically acknowledged the arbitration agreement . . . .").

Plaintiff's reliance on *Bentley v. AHC of Colorado Springs, LLC*, No. 25-cv-00127-RMR-MDB, ECF No. 34 (D. Colo. July 24, 2025) (Recommendation of Magistrate Judge Dominguez Braswell), is misplaced. First, the *Bentley* plaintiff expressly denied that the signature was hers or the decedent's and offered supporting evidence. *Id.* Here, Plaintiff does not even make a denial; he simply offers his lack of memory. Plaintiff's noncommittal to denying the existence of an agreement under penalty of perjury should not be overlooked. Second, the defendant in *Bentley* also failed to initially sign the Arbitration Agreement. *Id*. at 5. Yet Cigna and all of its subsidiaries assented to the Agreement here. Lastly, in *Bentley* there was evidence that the defendant stayed from its routine business

practices, whereas here Plaintiff himself concedes Workday digital signature acknowledgements (like the Agreement here) were a routine business practice that he routinely participated in. *Id*. at 7-8.

Plaintiff's remaining arguments against validity are not persuasive. An Agreement's signature field does not need to reflect the time zone. Whether Plaintiff signed the Agreement on March 4, 2020 at 7:40 p.m. Mountain or Eastern time makes no difference. Plaintiff's assertion that had he known what he knows now, he would have opted out "to preserve [his] ability to pursue employment-related claims in court," is likewise immaterial. ECF No. 41-1 at ¶ 8. It is hypothetical and does not establish that he submitted an opt-out notice, that the procedure was unavailable, or that the Workday record is inaccurate. The Agreement expressly stated that arbitration was voluntary, explained the 45-day opt-out procedure, and provided that continued employment without opting out constitutes mutual acceptance. ECF No. 37-1 at 3. Just like the consumer who ends up dissatisfied years down the road after a car or home purchase, buyer's remorse and changed perspectives afford no opportunity to set aside a valid agreement just because it is no longer preferable.

Plaintiff identifies no evidence suggesting that the Agreement submitted by Defendants is fraudulent, inaccurate, that the Workday record was generated from a different event, or that the acknowledgment language was not presented. His lack of access to Defendants' historical Workday system does not convert speculation into evidence, and he is not entitled to additional discovery or witness testimony simply because he cannot remember a routine transaction. Plaintiff does not explain how

discovery or testimony would refresh his recollection, as that is the primary issue Plaintiff relies upon in opposition to enforcement.

As Plaintiff acknowledges via his reference to *Howard v. Ferrellgas Partners, L.P.*, when there are no material disputes of fact, it "is permissible and efficient for a district court to decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration." *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014). If plaintiffs seeking the non-enforcement of an arbitration agreement could obtain a hearing anytime that they attest to not being able to "truthfully confirm or deny from personal recollection" their specific act of signing the agreement (as Plaintiff does and asks for here), the burden structure applied in *Bentley*, *Howard*, and other arbitration cases would be rendered meaningless. Because Plaintiff cannot deny the existence of the Agreement and simply doesn't recall the precise facts around it, as opposed to making any denial or credible argument of inauthenticity, there is no genuine dispute of material fact concerning the existence of the Agreement.

**B. The Plain Language of the Arbitration Agreement Makes Cigna-Evernorth Services, Inc. a Party.**

Plaintiff's contention that Cigna-Evernorth cannot enforce the Agreement merely because it is not specifically enumerated in Attachment A ignores the plain language of the Agreement that Plaintiff signed. The Agreement states: "As used in this Agreement, 'Cigna' includes Cigna Corporation and **all of** its subsidiaries, jointly and individually, including each of the organizations listed on Attachment A to this Agreement." ECF No. 37-1 at 1 (emphasis added). The phrase "including" introduces examples; it does not limit

the definition to the entities listed. Lyman v. Bow Mar, 533 P.2d 1129, 1133 (Colo. 1975) ("Further, the word 'include' is ordinarily used as a word of extension or enlargement…To hold otherwise here would transmogrify the word 'include' into the word 'mean.'"); *see also Burgess v. United States*, 553 U.S. 124, 131 n.3 (2008) (explaining that the word "includes" and its variations are "usually a term of enlargement, and not of limitation").

Additionally, "The primary goal of contract interpretation is to determine and effectuate the intent and reasonable expectations of the parties." *Copper Mountain, Inc. v. Ind. Systems, Inc*., 208 P.3d 692, 697 (Colo. 2009). "To determine the intent of the parties, the court should give effect to the plain and generally accepted meaning of the contractual language." *Id.* To effectuate the intent and reasonable expectations of the parties, the court should interpret a contract "in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless." *Id.* (quoting *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313. (Colo. 1984)). The meaning of the contract must be determined by examining "the entire instrument and not by viewing clauses or phrases in isolation." *Id.* (quoting *U.S. Fidelity & Guar, Co. v. Budget Rent-A-Car Sys., Inc.,* 842 P.2d 208, 213 (Colo.1992)).

Here, the phrase "all of its subsidiaries , jointly and individually, would be rendered meaningless" if the Agreement only applied to the entities expressly listed in the Agreement's Attachment A. Attachment A therefore confirms simply provides examples of subsidiaries, but is not an exhaustive roster. Cigna-Evernorth Services, Inc., as a subsidiary of Cigna Corporation, falls within the Agreement's definition.

### C. Plaintiff's Fallback Argument that Defendants Have Waived Their Right to Enforce the Arbitration Agreement Fails Because Defendants' Conduct and Communications Have Been Consistent with the Intent to Arbitrate.

Plaintiff also tries to argue waiver, but that argument is also meritless. Waiver requires an analysis of whether the defendant engaged in conduct inconsistent with the right to arbitrate, substantially invoked "the litigation machinery," requested arbitration enforcement near trial or delayed for a long period before seeking a stay, asserted a counterclaim, took important intervening steps such as taking advantage of judicial discovery processes not available via arbitration, and misled or prejudiced the opposing party. *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1489 (10th Cir. 1994)

Plaintiff hardly attempts an argument here, as all of these factors cut against any waiver. Immediately upon service of the Complaint, Defendants have actively sought to get this matter into arbitration as soon as possible, and informed Plaintiff and this Court of the same. They have not filed an answer, nor have they moved for a Court-ordered dismissal. Defendants have successfully sought a stay of not just discovery but all other deadlines pending the arbitration issue. Plaintiff's argument rests solely on the idea that Defendants told him about the binding Arbitration Agreement on June 19, 2025, four months after Plaintiff's informal wage demand in February 2025.[1] [ECF No. 41 at 7]. As Defendants had no obligation to even respond to an informal demand, the time gap

[1] While admitting that Defendants informed Plaintiff of the binding Arbitration Agreement as early as June 2025, Plaintiff notes some confusion as to Defendants' statement in ECF No. 37 that on June 4, 2025, they "**most recently** informed Plaintiff that his claims were subject to binding arbitration and provided Plaintiff with a copy of the Arbitration Agreement." ECF No. 41 at 7 (emphasis added). Defendants admit this was a typo, and it should have read "June 4, **2026**," as Defendants were referring to the "most recent" communication, not the earliest. **Exhibit A.**

Plaintiff focuses on means nothing. Plaintiff's argument only serves to concede that six months *before* Plaintiff originally filed this lawsuit in state court, Defendants informed him that they would enforce the Agreement should he file any legal proceedings.

**D. The Arbitral Forum Remains Accessible.**

The American Arbitration Association ("AAA") is an effective and accessible forum to Plaintiff. The Agreement provides that the parties will follow the AAA Rules for initial filing fees, but "in no event will [Plaintiff] be responsible for any portion of those fees in excess of the filing or initial appearance fees applicable to court actions in the jurisdiction where the arbitration will be conducted." It further provides that "Cigna otherwise shall pay all costs and expenses unique to arbitration, including without limitation the arbitrator's fees." ECF No. 37-1 at 1. Thus, Cigna bears the costs unique to arbitration, while Plaintiff's exposure is capped at the comparable court filing or initial-appearance fee.

Therefore, this generous arrangement is materially different than the authority that Plaintiff relies on in *Shankle v. B-G Maintenance Management of Colorado, Inc.*, 163 F.3d 1230, 1234-35 (10th Cir. 1999). There, the agreement required the employee to bear or split arbitrator fees, and the court concluded that those costs effectively foreclosed the forum. This Agreement does the opposite: it assigns arbitrator fees and other arbitration-specific costs to Cigna and/or its subsidiaries and limits Plaintiff's responsibility to what a court action would require.

Further, the AAA Employment Arbitration Rules provide that the AAA may waive filing fees when a claimant demonstrates financial hardship and contemplate that a court

order may direct a specific party to bear responsibility for the filing fee.[2] Plaintiff represents that he only makes $488 per month off of TANF, so this lack of financial means should be demonstrated. Also, to Plaintiff's request that Defendants pay any filing fee, Defendants state that they would welcome any Court order directing them to pay the AAA filing fees so that this matter can be promptly resolved in the proper forum that the parties have agreed to use.

## III. CONCLUSION

For the reasons stated herein, Plaintiff's claims should be addressed in the agreed-to arbitration forum, not in this Court. Defendants respectfully request the Court enforce the parties' agreement to arbitrate and stay this instant action until completion of the arbitration proceedings.

Respectfully submitted this 8th day of September, 2026.

JACKSON LEWIS P.C.

*s/ Marques A. Berrington*
Marques A. Berrington
Jonathan T. Smith
1400 Wewatta Street, Suite 900
Denver, Colorado 80202
Telephone: (303) 892-0404
Facsimile: (303) 409-3833
Marques.Berrington@jacksonlewis.com
Jonathan.Smith@jacksonlewis.com

*Attorneys for Defendants*

[2] https://www.adr.org/media/aktbpg2y/2026_employment-arbitration-rules-and-mediation-procedures.pdf at R-4(a)(ii) and R-52(last accessed September 7, 2026).

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 8th day of September, 2026, a true and correct copy of the foregoing **DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION** was filed via CM/ECF and served on the following:

Matthew Price*, pro se Plaintiff*
2207 East 12th Street, Apt. 77
Pueblo, CO 81001
matt@mattp.cc

*s/ Melinda Tancrede*
For Jackson Lewis P.C.